OPINION OF THE JUSTICES OF THE SUPREME JUDICIAL COURT, ON THE QUESTION, WHETHER ALIENS ARE RATABLE POLLS.

The polls of aliens may, within the intent of the constitution, be ratable polls, when made liable by the legislature to be rated to public taxes.

The polls of male aliens, above sixteen years of age, are now (1811) ratable polls, within the meaning of the constitution.

Ratable polls of aliens may constitutionally be included in estimating the number of ratable polls, to determine the number of representatives any town may be entitled to elect.

The right of sending a representative is a corporate right, and if a town vote not to send, an election cannot be made by a minority dissenting from that vote.

The legislature may, by law, establish what shall or shall not be ratable polls, upon which to predicate representation; the designation thereof being left, by the constitution, to the discretion of future legislatures.

On the sixth day of February, 1811, the following order was passed:—

" Ordered that the justices of the supreme judicial court be requested, as soon as may be, to give their opinion on the following question:—

Whether aliens are ratable polls within the intent and meaning of the constitution of this commonwealth?—and whether the towns in this commonwealth, in ascertaining their number of ratable polls, in order to determine the number of representatives they are entitled to send to this house, can constitutionally include in that number aliens resident in said towns, and predicate a representation on such resident aliens?—and, whether such representation can constitutionally be predicated

on the number resulting from the including, in the number of ratable polls, aliens resident in any towns within this commonwealth, and taxed, and paying taxes therein?"

On the sixteenth, the following opinion was received by the speaker, and by him communicated to the house:—

" To the speaker of the honorable house of representatives of the general court of Massachusetts.

SIR,—The undersigned, justices of the supreme judicial court, have considered the several questions, proposed to them by an order of the house, passed the 6th of February instant.

Before we advert to those questions, some general remarks on the constitution, and on some rules by which its construction is ascertained, may illustrate the reasons of our opinion.

From the manner, in which the department of legislation is formed, two questions may arise: one relating to the qualifications of the electors;—and the other relating to the apportionment of senators and representatives among the senatorial districts, and among the towns.

The elector of a senator must be an inhabitant of the senatorial district, in which he votes; and the elector of a representative must have resided one year in the town, before he can there be a voter. But an alien may be an inhabitant of a district, because he may there dwell, or have his home; and he may have resided in some town more than a year.— Can therefore an alien be a legal voter for a senator or representative?

Before this question is answered, we shall explain the principles on which the answer will be given.

The constitution is law, the people having been the legislators; and the several statutes of the commonwealth, enacted pursuant to the constitution, are law; the senators and representatives being the legislators. But the provisions of the constitution, and of any statute, are the intentions of the legislature thereby manifested. These intentions are to be ascertained by a reasonable construction, resulting from the application of correct maxims, generally acknowledged and received.

Two of these maxims we will mention :— That the natural import of the words of any legislative act, according to the common use of them, when applied to the subject matter of the act, is to be considered as expressing the intention of the legislature : unless the intention, so resulting from the ordinary import of the words, be repugnant to sound, acknowledged principles of national policy.—And if that intention be repugnant to such principles of national policy, then the import of the words ought to be enlarged or restrained, so that it may comport with those principles : unless the intention of the legislature be clearly and manifestly repugnant to them. For although it is not to be presumed, that a legislature will violate principles of public policy, yet an intention of the legislature repugnant to those principles, clearly, manifestly and constitutionally expressed, must have the force of law.

In consequence of the application of these maxims, similar expressions in different statutes, and sometimes in the same statute, are liable to, and indeed do receive, different constructions, so that the true intent of the legislature may prevail.

Now we assume, as an unquestionable principle of sound national policy in this state, that, as the supreme power rests wholly in the citizens, so the exercise of it, or of any branch of it, ought not to be delegated by any but citizens, and only to citizens. It is therefore to be presumed that the people, in making the constitution, intended that the supreme power of legislation should not be delegated, but by citizens. And if the people intended to impart a portion of their political rights to aliens, this intention ought not to be collected from general words, which do not necessarily imply it, but from clear and manifest expressions, which are not to be misunderstood.

But the words "inhabitants" or "residents," may comprehend aliens; or they may be restrained to such inhabitants or residents, who are citizens; according to the subject matter, to which they are applied. The latter construction comports with the general design of the constitution. There the words "people" and "citizens" are synonymous. The people are declared to make the constitution for themselves, and their

posterity. And the representation in the general court is a representation of the citizens. If therefore aliens could vote in the election of representatives, the representation would be not of citizens only, but of others; unless we should preposterously conclude, that a legally authorized elector of a representative is not represented.

It may therefore seem superfluous to declare our opinion, that the authority given to inhabitants and residents, to vote, is restrained to such inhabitants and residents as are citizens.

This construction, given to the constitution, is analagous to that given to several statutes.—Creditors may levy their execution on the lands of their debtors, and hold them in fee simple, unless redeemed. Although the words of the statute are general, yet they are not deemed to include alien creditors. If they were so deemed, then under color of a judgment and execution, the rule of the common law, prohibiting an alien from holding lands against the commonwealth, would be defeated. So a general provision is made for the dower of widows; yet it is not supposed that a woman, who is an alien, can claim, and have assigned to her, dower in the lands of her deceased husband.

We now proceed to consider the constitution as relating to the apportionment of representatives among the towns, and of senators among the senatorial districts.

The right of sending representatives is corporate, vested in the town; and the right of choosing them is personal, vested in the legal voters. Because the right of sending a representative is corporate, if the town, by a legal corporate act, vote not to send a representative, none can be legally chosen by a minority dissenting from that vote. This corporate right is also a corporate duty, for the neglect of which a fine may be assessed and levied upon all the inhabitants liable to pay public taxes.

The number of representatives, which each town may send, depends on the number of ratable polls in the town; with the exception of towns incorporated before the making of the constitution, who may send at least one representative. The

rule of apportionment therefore does not depend on the number of legal voters, all of whom must be of full age; whereas the polls of minors, above the age of sixteen years, were ratable at the establishment of the constitution. What polls are, or are not ratable, are not designated by the people; they having left the designation to the discretion of future legislatures. And when the general court has by law declared what polls are ratable, all those polls are to be deemed ratable polls in the respective towns, in which they dwell.

A question therefore arises, whether the legislature can constitutionally provide, that the polls of aliens shall be ratable.

If by this provision aliens would acquire any political rights, to the diminution of the rights of citizens, we should for the reasons before given strongly incline to believe, that the legislature were restrained from making this provision. For as the political rights, arising under the constitution, are manifestly the rights of the citizens, the language of the constitution ought to be so construed, if practicable, that these rights should not be diminished, by sharing them with aliens. But without deciding what municipal, parochial, or corporate rights, aliens may, by the equity and benignity of the laws, acquire in consequence of their paying public or other taxes on their chattels, real or personal, or on their polls; it is extremely clear, that by such payment they acquire no political rights whatever. Whether their polls are, or are not ratable, they are not qualified voters for senators or representatives; nor can they be qualified to hold either of those offices.

No reasons have occurred to us, to restrain the power of the legislature from making the polls or the estates of aliens ratable; for the only limit to that power, under the constitution, is an exercise of it repugnant to the constitution. We have observed, that the political rights of the citizens are not affected by the exercise of that power; and we may observe, that it is the interest of the citizens, that it should be exercised in obliging aliens to contribute their reasonable proportion towards defraying the expenses of the government. As aliens residing among us receive the protection of the common-

16

wealth, and are secured in the fruits of their labor, and in the acquisition of goods and chattels, this contribution may be exacted, as a reasonable price of this protection and security, And when an alien is obliged to pay no other tax on his poll and estate, than is required from a citizen, having equal personal ability and estate, he cannot complain that the assessment is inequitable.

Before we can answer directly the question submitted to us, we are obliged to inquire, whether the polls of aliens are at this time by law ratable. By the last public tax act, the assessors of each town are required to assess all the male polls, above the age of sixteen years, within their respective towns, including negroes and mulattoes; with the exception of the president of Harvard College, and some other descriptions of persons, in which aliens are not included. The words are general, and according to their common usage extend, as well to the polls of aliens, as of citizens, who are above the age of sixteen years; and for the reasons we have given, we are not authorized so to restrain them, as to deny to the legislature the right of making the polls and estates of aliens ratable, or to refuse to the citizens the privilege of demanding from aliens a reasonable contribution towards the public charges.

If it should be asked, whether the poll of an alien may not be considered ratable, for the purpose of *obliging* him to pay a public tax, and not be considered ratable for the purpose of ascertaining the political rights of the town, in which he may live?—we should declare, that we know of but one purpose, for which a poll is ratable, which is making it subject to a capitation tax. If it is so subject, it is a ratable poll within the constitution. And if any town, incorporated since the constitution was established, contained one hundred and fifty ratable polls only, including the ratable polls of aliens within it, it would be competent for the legislature to impose a fine on this town, refusing to send a representative, for the breach of such political and corporate duty.

As senators are apportioned among the senatorial districts, in proportion to the public taxes they respectively pay, we can-

not distinguish between the ratable poll of an alien, operating in the apportionment of representatives among towns, and the public tax paid by an alien, operating in the apportionment of senators among the senatorial districts. And in making this last apportionment, it is not an object of inquiry, whether a part of the public tax any district has paid was assessed on, and collected from the polls of aliens.

We request the indulgence of the honorable house for having considered the subject so much at large. Perhaps it was unnecessary; but it was done for our own sakes, clearly to explain the reason, that while we admit the general rule, that words, in any legislative act, are to be construed according to the common usage; yet that there are cases, in which their import may be enlarged or restrained, to express the real intention of the legislature, which, when ascertained, is the law resulting from the act. Thus we have restrained the general import of the words "inhabitants" and "residents," used in some parts of the constitution, to inhabitants and residents who are citizens; that we might not unnecessarily fix on the people an intention of imparting any of their rights of sovereignty to aliens: and at the same time we have used the words "ratable polls" according to their common acceptation, as there is no principle of construction authorizing us to deviate from it, by denying to the legislature the right of making the estates and polls of aliens ratable. For the taxes, assessed on the polls and estates of aliens, have no effect on their political rights, but merely influence the apportionment of representatives among the towns, and of senators among the senatorial districts; in which apportionments aliens have no interest or concern.

We now respectfully submit to the honorable house our opinion, formed after the best deliberation we have given the subject;—and it is our opinion—

That the polls of aliens may, within the true intent and meaning of the constitution, be ratable polls, when and so long as they are made liable, by any legislative act, to be rated to public taxes.

That the polls of male aliens, above the age of sixteen years, are now by law liable to be rated to public taxes, and now are ratable polls, within the intent and meaning of the constitution; and, consequently,

That the several towns in the state, in ascertaining their number of ratable polls, in order to determine the number of representatives they are entitled to send, can constitutionally include in the number of their ratable polls, the polls of aliens, residing in their towns respectively, by law ratable to public taxes, and predicate a representation thereon, which will be a constitutional representation.

(Signed)      THEOP. PARSONS.
              SAMUEL SEWALL,
              ISAAC PARKER.

## 1811—1812.

### COMMITTEE ON ELECTIONS.

Messrs. *Eleazer W. Ripley*, of Waterville,[1] *Estes Howe*, of Sutton, *Charles Davis*, of Boston, *Joseph E. Sprague*, of Salem, *Edmund Dwight*, of Springfield.

### REPORTER.

*David Everett, Esq.*, of Boston.

[1] Mr. Ripley was chosen speaker, upon the resignation of the Hon. Joseph Story, at the January session. The committee on elections, during the investigation of the case of *Rehoboth*, as appears by a memorandum on the report therein, was composed of Messrs. *Charles Davis*, of Boston, *John Nevers*, of Northfield, *Benjamin Greene*, of Berwick, *Christopher Webb*, of Weymouth, and *Edmund Dwight*, of Springfield.